UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00064-GNS-HBB


LARHONDA DUNLAP PEREZ                                                    PLAINTIFF

v.

OFFICER BRYAN SIMPSON; and
OFFICER JOSH PATRICK                                                    DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions for Additional Pages (DN 87),

Summary Judgment (DN 91), and to Exclude Plaintiff's Expert (DN 92), and Plaintiff's Motion to

Exclude an Opinion by Defendants' Expert (DN 88).  The motions are ripe for adjudication.

## I.      SUMMARY OF THE FACTS

In May 2018, Defendants Bryan Simpson[1] ("Simpson") and Josh Patrick ("Patrick"), both

police officers employed by the Campbellsville Police Department, approached Plaintiff

LaRhonda Dunlap Perez ("Perez") at her home regarding several outstanding felony arrest

warrants.  (4th Am. Compl. 4).  Perez fled, with Simpson and Patrick in pursuit.  (4th Am. Compl.

4).  After a brief flight, Perez allegedly stopped and raised her hands in surrender.  (4th Am. Compl.

4).  Nevertheless, Patrick deployed his taser, which struck Perez in the back.  (4th Am. Compl. 4).

The resulting electrical shock caused Perez to hit her head on asphalt, which rendered her

unconscious and knocked out several teeth.[2]  (4th Am. Compl. 4-5).

---

[1] The Fourth Amended Complaint asserts claims against "Bryan Simpson," while the Answer
identifies him as "Bryon Simpson."  (4th Am. Compl. 2, DN 27; Defs.' Answer 1, DN 36).  For
clarity, the Court will use "Bryan" to align with the pleadings.
[2] Patrick previously deployed his taser, but missed, while pursuing Perez.  (Patrick Dep. 57:5-24,
Dec. 9, 2021, DN 89-3).

Perez initiated this action pursuant to 42 U.S.C. § 1983 asserting claims against Simpson and Patrick for excessive force and failing to provide medical care, in violation of the Fourth and Fourteenth Amendments, respectively.  (Compl., DN 1; 4th Am. Compl.).  Perez now abandons all claims except for the Fourth Amendment excessive force claim against Patrick for use of the taser.[3] (Pl.'s Resp. Defs.' Mot. Summ. J. 25 n.214, DN 99).

## II.     JURISDICTION

The Court exercises federal question jurisdiction over the action.  *See* 28 U.S.C. § 1331.

## III.     DISCUSSION

### A.     Motions Regarding Expert Witnesses

Perez and Patrick filed motions to exclude opinions by expert witnesses.  (Pl.'s Mot. Exclude, DN 88; Defs.' Mot. Exclude, DN 92).  Perez moves to exclude one of several opinions by Patrick's expert, Greg Meyer ("Meyer"); Patrick seeks the wholesale exclusion of Perez's expert, William Dee Fryer ("Fryer").  (Pl.'s Mot. Exclude 2-3; Defs.' Mot. Exclude 6-8).  Patrick insists that Meyer's contested opinion rebuts opinions offered by Fryer, so both motions are ultimately predicated on the admissibility of Fryer's opinions.  (Defs.' Resp. Pl.'s Mot. Exclude 1-2, DN 94).

Fed. R. Evid. 702 governs expert witness testimony, with an expert's opinion being admissible if:  (1) the expert is qualified by knowledge, skill, experience, training, or education; (2) the testimony is relevant, so it assists the jury in understanding the evidence or determining a fact in issue; and (3) the testimony is reliable.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517,

---

[3] After a plaintiff abandons a claim, courts routinely to grant summary judgment as a matter of course. *See Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).  As such, the motion for summary judgment is granted on both claims under the Fourteenth Amendment and on the Fourth Amendment claim against Simpson.

529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). The testimony must also be "relevant to the task

at hand." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (internal quotation

marks omitted) (citation omitted). Thus, courts act as gatekeepers to ensure conformity with these

requirements. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).[4]

The proffering party bears the burden of establishing the admissibility of expert testimony,

and "[a]ny doubts . . . should be resolved in favor of admissibility." *Commins v. Genie Indus.,

Inc.*, No. 3:16-CV-00608-GNS-RSE, 2020 U.S. Dist. LEXIS 43123, at *8 (W.D. Ky. Mar. 12,

2020) (alteration in original) (quoting *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th

Cir. 2001); *In re E.I. Du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 337 F. Supp. 3d 728, 739

(S.D. Ohio 2015)). The "rejection of expert testimony is the exception, rather than the rule," as

these gatekeeping obligations should not "replace the traditional adversary system . . . [or] the jury

within the system." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (quoting Fed. R. Evid. 702

advisory committee's notes to the 2000 amendments); *Rogers v. Detroit Edison Co.*, 328 F. Supp.

2d 687, 691 (E.D. Mich. 2004) (citing *Daubert*, 509 U.S. at 596). Instead, "[v]igorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509

U.S. at 596 (citation omitted).

Perez timely disclosed Fryer as an expert witness and proffered his report. (Pl.'s Expert

Disclosure 1, DN 78; Pl.'s Expert Disclosure Ex. 1, DN 78-1 [hereinafter Fryer Report]). Fryer

details decades of police experience, including serving as a police officer; an instructor with, and

---

[4] The gatekeeping obligations in *Daubert* only applied to "scientific knowledge," but they were later extended to include "testimony based on 'technical' and 'other specialized' knowledge." *Daubert*, 509 U.S. at 592; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 152 (1999) (citing Fed. R. Evid. 702).

as deputy director of, the Kentucky Police Corps; and an instructor with the Kentucky Department of Criminal Justice Training. (Fryer Report 1). Fryer indicated he was certified in thirteen areas, including use of force, and previously testified as an expert regarding use of force. (Fryer Report 1).

Patrick contends Fryer is unqualified to be an expert as he has not served as a police officer since 1998, has never been trained or certified with tasers, nor has he published articles about their use. (Defs.' Mot. Exclude 7). Patrick alleges Fryer's knowledge and experience is outdated and overbroad, thereby lacking the required specialized knowledge about tasers and their proper use. (Defs.' Mot. Exclude 6 (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004); *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994))). Patrick's interpretation of *Champion* and *Berry* ultimately requires an expert to be specialized in the exact weapon used.

In *Berry*, the Sixth Circuit determined an expert witness was unqualified to testify concerning the city's policy on use of force, as his expertise in "police policies and practices" was too broad to qualify as specialized knowledge. *Champion*, 380 F.3d at 907-08 (citing *Berry*, 25 F.3d at 1348-54). Moreover, the witness had no credentials demonstrating expertise or training in police activities. *Id.* at 908. In *Champion*, however, the Sixth Circuit found the field of criminology to be sufficient for an expert to testify about excessive force, especially when his credentials were "more extensive and substantial." *Id.* at 908-09. Neither case supports Patrick's suggested standard.

Additionally, this Court has declined to exclude Fryer as an expert, albeit on a different but related subject, and reiterated:

> The law does not require that an admissible expert have every conceivable qualification, only that his background provides a proper foundation for testimony which will 'assist the trier of fact in understanding and disposing of issues relevant

to the case.' . . . The law does not require [an expert to] be the most qualified expert conceivable . . . ."

*Browning v. Edmonson Cnty.*, No. 1:18-CV-00057-GNS-HBB, 2020 U.S. Dist. LEXIS 145787, at *49 (W.D. Ky. Aug. 13, 2020) (alteration in original) (quoting *Faughn v. Upright, Inc.*, No. 5:03-CV-000237-TBR, 2007 U.S. Dist. LEXIS 19341, at *4, *10 (W.D. Ky. Mar. 15, 2007)), *aff'd in part and rev'd in part on other grounds*, 18 F.4th 516 (6th Cir. 2021); *see also Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1122 (M.D. Tenn. 2009) (noting that despite the expert's limited taser experience, "based on his experience, he is capable of understanding how a taser basically works and whether a certain type of application would be unreasonable."); *accord Morrison v. Stephenson*, No. 2:06-cv-283, 2008 U.S. Dist. LEXIS 12308, at *16 (S.D. Ohio Feb. 5, 2008) ("The fact [an expert] has not used or been trained in the use of a TASER is not dispositive of his knowledge regarding use of force."). "Whether [an expert's] expertise is dated or . . . too limited go[es] to the weight of his testimony, not its admissibility." *Lee*, 596 F. Supp. 2d at 1122.

Patrick also maintains Fryer does not utilize reliable principles and methods but offers only personal opinions. (Defs.' Mot. Exclude 8). As noted, the proposed testimony must be "relevant to the task at hand." *Smelser*, 105 F.3d at 303 (internal quotation marks omitted) (citation omitted). "[T]he court is to examine 'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry*, 25 F.3d at 1351). "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," which is "premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592 (citations omitted). Still, "a witness is not an expert simply because he claims to be." *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010) (citation omitted).

Fryer testified that he reviewed the police department's policies and procedures and general orders, specifically those discussing foot pursuits and resistance responses, which are drafted to align with relevant caselaw.  (Fryer Dep. 33:23-35:2, Feb. 8, 2022, DN 89-5). Moreover, Fryer reviewed the taser training materials.  (Fryer Report 6).  Fryer's report details considerations made during a pursuit to determine whether and when certain weapons or techniques should be used, such as whether the suspect's identity is known, the nature of the alleged crimes, the risk of harm to the suspect, the level of threat to the officers and community, and whether capture could be safely effected later.   (Fryer Report 4); *cf. Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining that reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  (citation omitted)).  Considering the overlap between *Graham* and Fryer's report, his testimony is sufficiently reliable.  Though Fryer's opinion embraces the issue of reasonableness, it could be helpful to the jury.  *See Berry*, 25 F.3d at 1353 ("Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' the issue embraced must be a factual one."  (alterations in original) (internal citation omitted)).  Therefore, Patrick's motion to exclude is denied.

Relatedly, Perez moves to exclude an opinion from Meyer's report that tasers are "a generally effective, generally safer alternative to other types of force."  (Pl.'s Mot. Exclude 2-3 (quoting Defs.' Expert Disclosure Ex. 1, at 11, DN 84-1 [hereinafter Meyer Report])).   Perez contends that efficacy and safety are not relevant, only whether Patrick's use of the taser was reasonable under the circumstances.  (Pl.'s Mot. Exclude 2).  Patrick maintains that Meyer's opinion responds to criticism by Fryer about tasers.  (Defs.' Resp. Pl.'s Mot. Exclude 2).

Fryer testified that a taser is classified as an "intermediate weapon" on the "continuum of force", but that a taser is "one of the most harsh of the intermediate weapons" and "very volatile." (Fryer Dep. 35:6-36:3, 38:9-15).  He reiterated that it is necessary for officers to consider the environmental conditions and type of surface when evaluating whether to deploy a taser.  (Fryer Dep. 16:2-11).  Fryer characterized Perez's post-taser fall as one where she "became a lawn dart," as she fell "face first into the street with no ability to break her fall . . . ."  (Fryer Dep. 23:22-24). Fryer opined that the officers should have apprehended Perez by continuing the pursuit until she was caught and then subdue her through "Empty Hand Control techniques," but "[t]here was no indication . . . that this option was ever considered."  (Fryer Report 4).  Instead, Fryer stated that Patrick should have known his taser would result in serious injury, especially with Perez being in a roadway.  (Fryer Report 5).  Ultimately, Fryer disagreed that tasers reduced the risk of injury to officers and suspects.  (Fryer Dep. 79:7-12).

Meyer's opinion contradicts Fryer's opinions and cites academic studies to bolster his opinion about a taser's safety and efficacy.  (Meyer Report 11-13).  When evaluating the degree of use of force, the reasonableness of an officer's actions also considers "whether the officer could have diffused the situation with less forceful tactics." *Palma v. Johns*, 27 F.4th 419, 432 (6th Cir. 2022) (citation omitted) (discussing the reasonableness for using deadly force).  As discussed above, an officer may consider the risk of injury to the suspect when weighing the best course of action to terminate a pursuit, and the efficacy of a taser in subduing a suspect with minimized injuries may impact that deliberation.  (*See* Fryer Report 4).  Such considerations are discussed in both experts' opinions and would assist the fact finder in deciding the merits of claims asserted by Perez.  *See* Fed. R. Evid. 702.  As such, Perez's motion to exclude is denied.

## B. **Defendants' Motion for Summary Judgment**[5]

Patrick maintains that he is entitled to summary judgment by virtue of qualified immunity.[6]

(Defs.' Mem. Supp. Mot. Summ. J. 18-29).  Perez insists qualified immunity is inapplicable, as

Patrick violated her clearly established rights and because qualified immunity did not exist at

common law when 42 U.S.C. § 1983 was enacted.  (Pl.'s Resp. Defs.' Mot. Summ. J. 13-24).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The moving party bears the burden of establishing the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Thereafter, the nonmoving party must present

specific facts indicating a genuine issue of a disputed material fact essential to the case which must

be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the

evidence, however, is "not required to be resolved conclusively in favor of the party asserting its

existence . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986);

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

This analysis is modified, however, when qualified immunity is involved.  "[Q]ualified

immunity protects government officials 'from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[5] Patrick requests leave for additional pages in filing his summary judgment motion, which is uncontested.  (Defs.' Mot. Leave, DN 87 (citing LR 7.1(d)).  Perez has not contested the motion. Therefore, it is granted.

[6] Patrick also argues Perez's claim is barred by KRS 503.090, which details when the use of force is justified under Kentucky law.  (Defs.' Mem. Supp. Mot. Summ. J. 30-31, DN 91-1).  This statute is inapplicable, as Perez only asserts federal constitutional claims.  (*See* 4th Am. Compl.); *cf. Browning*, 18 F.4th at 530-31 (considering KRS 503.090 when reviewing the denial of qualified immunity for a state law claim of battery).  Moreover, this Court's jurisdiction is predicated on federal question, not diversity.  *See* 28 U.S.C. §§ 1331, 1332; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").  Thus, Patrick is awarded no relief.

would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Graham*, 490 U.S. at 394 (concluding that excessive force claims are "most properly characterized as [] invoking the protections of the Fourth Amendment . . . ."); *Browning*, 18 F.4th at 524 ("To prevail on the excessive-force claim, [a plaintiff] must show that [the officer]'s use of the taser amounted to a violation of [her] clearly established constitutional rights." (citation omitted)). "Once invoked, the plaintiff must show that the defendant is *not* entitled to qualified immunity . . . [and] that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right." *Puskas v. Del. Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023) (quoting *Williams v. Maurer*, 9 F.4th 416, 430-31 (6th Cir. 2021)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citation omitted).

"The difficult part . . . is identifying the level of generality at which the constitutional right must be clearly established." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 497 (6th Cir. 2012) (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). Courts should "not [] define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). *Cockrell* lends guidance, as it asked "whether a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command, had a clearly established right not to be tased . . . ." *Cockrell*, 468 F. App'x at 495. Perez, however, knew the officers were attempting to serve were there about warrants and heard them yell at her to stop running. (Perez Dep. 32:12-34:25,52:14-54:1, 75:1-5, Aug. 12, 2021, DN 89-1). As such, the question is whether a felony suspect in flight from officers attempting to effect

an arrest warrant and who disobeyed an official order, but subsequently stopped fleeing and surrendered,[7] had a clearly established right not to be tased.

"[A] plaintiff need not always put forth 'a case directly on point' to show that his claimed rights were indeed clearly established at the time of the conduct." *Shumate v. City of Adrian*, 44 F.4th 427, 449 (6th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curium)). Rather, Perez must show "it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted" and "in light of pre-existing law, the unlawfulness [of the official action] must be apparent." *Id.* at 449-50 (alteration in original) (internal quotation marks omitted) (quoting *Palma*, 27 F.4th at 442; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). As the events in this case occurred on May 1, 2018, the right must be clearly established before then.

The Sixth Circuit has held it to be clearly established that "an officer cannot use injurious physical force to subdue a suspect that is not actively resisting arrest." *Meadows v. City of Walker*, 46 F.4th 416, 423 (6th Cir. 2022) (citation omitted); *cf. Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) ("Our cases firmly establish that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." (citing *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012))). Moreover, "[c]ertainly by 2018 . . . it was clearly established in this circuit that an individual has a constitutional right not to be tased when he or she is not actively resisting." *Browning*, 18 F.4th at 525; *see id.* (collecting cases); *Brown v. Chapman*, 814 F.3d 447, 461-62 (6th Cir. 2016) ("[A]s of December 31, 2010, it was

---

[7] As discussed below, Perez alleges she stopped running and surrendered before Patrick deployed his taser, while Patrick contends that Perez had restarted her flight before deploying his taser. (4th Am. Compl. 4; Patrick Dep. 70:13-72:5). At this stage, the facts must be viewed in the light most favorable to Perez. *Puskas*, 56 F.4th at 1092.

clearly established that tasering a non-threatening suspect who was not actively resisting arrest constituted excessive force."); *Shumate*, 44 F.4th at 450 (holding that the right to be free from physical force when one is not actively resisting the police was clearly established by 2019); *Gambrel v. Knox Cnty.*, 25 F.4th 391, 403 (6th Cir. 2022) ("[O]ur precedent had 'clearly establish[ed] the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.'" (second alteration in original) (quoting *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006))). This applies when "suspects were compliant or had stopped resisting." *Hagans*, 695 F.3d at 509-10; *see Rudlaff*, 791 F.3d at 642. Thus, Perez's right was clearly established by May 2018.

As for the constitutional violation prong, an officer's use of force is excessive, thereby violating the Fourth Amendment, if it is objectively unreasonable. *Jarvela v. Washtenaw Cnty.*, 40 F.4th 761, 764 (6th Cir. 2022) (quoting *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020)). This is "judged from the perspective of a reasonable officer on the scene," untainted by hindsight. *Graham*, 490 U.S. at 396. Courts consider the amount of force used and the factors detailed in *Graham*—(1) the severity of the crime at issue, (2) whether the suspect posed an immediate safety threat to the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight—when evaluating reasonableness.[8] *Id.*; *Jarvela*, 40 F.4th at 764 (quoting *Hicks*, 958 F.3d at 435). "Importantly, the inquiry is not whether *any* force was justified, but 'whether the [officer] "could reasonably use the *degree* of force"' that was employed." *LaPlante*, 30 F.4th at 579 (alteration in original) (quoting *Roell v. Hamilton Cnty.*, 870 F.3d 471, 483 (6th Cir. 2017)).

---

[8] This list is not exhaustive, however, as reasonableness is assessed by the totality of the circumstances. *LaPlante v. City of Battle Creek*, 30 F.4th 572, 579 (6th Cir. 2022) (quoting *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007)).

The Sixth Circuit has indicated that "there is not 'obvious cruelty inherent' in the use of

tasers," but they do "involve a significant degree of force." *Cockrell*, 468 F. App'x at 497-98

(citation omitted). The use of a taser alone, however, does not presuppose that Patrick's actions

were objectively unreasonable, as the Sixth Circuit has previously concluded that their use is not

excessive force. *See, e.g.*, *id.* at 495 (collecting cases); *Rudlaff*, 791 F.3d at 642-43 (collecting

cases); *Williams v. Sandel*, 433 F. App'x 353, 362-63 (6th Cir. 2011) (concluding that using tasers

thirty-seven times, plus batons and pepper spray, was not objectively unreasonable given that the

suspect was still not subdued). Patrick deployed his taser one time with the electrical charge to

Perez lasting for five seconds. (4th Am. Compl. 4; Defs.' Mot. Summ. J. Ex. 7, at 4, DN 91-8

(response to resistance form completed by Patrick); Defs.' Mot. Summ. J. Ex 9, DN 91-10 (taser

event log)). Thereafter, Patrick was able to secure Perez in handcuffs. (Perez Dep. 55:13-56:11).

This single burst favors reasonableness, as it does not show gratuitous overuse of the taser. Adding

to the calculus is whether Patrick announced his intention to use his taser, which he maintains that

he did, while Perez alleges that she did not hear anything to that effect. (Patrick Dep. 64:10-17;

Perez Dep. 52:14-54:1); *see Baker v. Union Twp.*, 587 F. App'x 229, 236 (6th Cir. 2014) ("The

tasing of a suspect without warning is, at the very least, an additional factor useful in determining

whether an officer violated a suspect's Fourth Amendment right to be free of excessive force."

(citation omitted)).

As for the severity of her crimes, Perez's arrest warrants were for six felony charges of

criminal possession of a forged instrument in the second degree. (Perez Dep. 66:8-67:5; *see* Perez

Dep. Ex. 4 (served warrant)). These charges are serious but are not "severe" under this factor, as

they lack violent or aggressive conduct. KRS 516.060; *see Eldridge v. City of Warren*, 533 F.

App'x 529, 532-33 (6th Cir. 2013) (citation omitted) (noting that an allegation of driving under

the influence "is undoubtedly serious" but concluding that it was not "categorically 'severe'" or severe based upon the facts to permit the use of a taser on a driver); *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (observing that disturbing the peace is a "relatively minor" offense and, given the circumstances, did not merit the use of pepper spray).

Relatedly, it is unclear whether Perez posed an immediate threat to the safety of the officers or others, given the lack of violent or aggressive offense-related conduct and that Perez only fled from the scene.  Neither party has alleged, nor has any evidence demonstrated, that Perez attacked (or attempted to attack) Patrick or Simpson or that Perez was armed during this encounter.  Perez voiced her anger and displeasure to the officers about Patrick's use of the taser and her injuries, but this did not occur until after Patrick deployed the taser, handcuffed Perez, and escorted her to a police cruiser.  (Perez Dep. 57:22-58:11; *see* Defs.' Mot. Summ. J. Ex. 5, DN 91-6 (Facebook Live video)).  As such, her statements do not constitute an immediate safety threat to justify the use of the taser.  Perez conceded that it was possible for her flight to be a danger to motorists but did not believe it placed her, Patrick, or Simpson in danger.  (Perez Dep. 75:6-76:1).  While fleeing, Perez ran across one street and stopped before the second, as the first street did not have any cars on the road while the second had oncoming cars.  (Perez Dep. 43:22-44:18, 47:5-18, 50:4-51:14).  Thus, it is unclear whether Perez presented a danger to motorists.  (*See* Patrick Dep. 64:23-66:18 (discussing how Patrick viewed the flight as a danger to Perez, Patrick, Simpson, and motorists)).

Finally, the Sixth Circuit has pronounced it is "firmly establish[ed] that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff*, 791 F.3d at 641 (citing *Hagans*, 695 F.3d at 509).  Thus, a "simple dichotomy [] emerges:  When a suspect actively resists arrest, the police can use a taser . . . to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Id.* at 642.  Active resistance

requires "some outward manifestation—either verbal or physical—on the part of the suspect [to] suggest[] volitional and conscious defiance." *Shumate*, 44 F.4th at 446 (quoting *Eldridge*, 533 F. App'x at 533-34); *cf. LaPlante*, 30 F.4th at 580 ("But the fact that a suspect does not immediately surrender does not inherently mean that he is resisting." (citations omitted)). "[F]light, non-violent though it may be, is still a form of resistance." *Cockrell*, 468 F. App'x at 496.

Neither party disputes that Perez fled, as Perez was charged with and pled guilty to fleeing or evading police and resisting arrest. (Perez Dep. 14:9-23). Perez alleges, however, that she stopped running and raised her arms in surrender before Patrick deployed his taser. (4th Am. Compl. 4). She testified that she intended to cross the street and "wasn't going to surrender" but stopped because of the cars, "knew [she] couldn't go any further," and "just figured [she] would be handcuffed and taken to jail." (Perez Dep. 47:22-48:5, 50:3-51:14, 55:5-10). Conversely, Patrick testified that Perez stopped before the road but began running again before he tased her. (Patrick Dep. 70:13-72:5).

At the summary judgment stage, facts must be viewed in the light most favorable to Perez. *See Puskas*, 56 F.4th at 1092. If Perez had surrendered, then she would have been no longer actively resisting, so Patrick's use of the taser could have violated a clearly established right given that a reasonable officer "would have understood that what he [was] doing violates" the right of a non-resisting suspect to be free from being tased. *Rivas-Villegas*, 142 S. Ct. at 7 (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curium)); *Browning*, 18 F.4th at 525. Alternatively, if Perez was still fleeing then she was actively resisting and Patrick's use of the taser could be deemed reasonable. *See Rudlaff*, 791 F.3d at 641. Therefore, a reasonable jury may conclude that Perez ceased any resistance by stopping and raising her arms in surrender. *See Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) ("[W]here the legal question of

14

qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." (quoting *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010))); *accord Champion*, 380 F.3d at 900 (quoting *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000)). As such, Patrick's motion for summary judgment is denied.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendants' Motion for Leave for Additional Pages (DN 87) is **GRANTED**.

2.    Plaintiff's Motion to Exclude Opinions by Greg Meyer (DN 88) is **DENIED**.

3.    Defendants' Motion to Exclude William Dee Fryer (DN 92) is **DENIED**.

4.    Defendants' Motion for Summary Judgment (DN 91) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims against Defendant Bryan Simpson are **DISMISSED WITH PREJUDICE**. Plaintiff's claim against Defendant Josh Patrick for failure to provide medical care in violation of the Fourteenth Amendment is **DISMISSED WITH PREJUDICE**. Plaintiff's claim against Defendant Josh Patrick for excessive force in violation of the Fourth Amendment shall continue.

Greg N. Stivers, Chief Judge
United States District Court

March 1, 2023

cc:    counsel of record